**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0298n.06

No. 14-1641

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Apr 23, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| SAMUEL STEEL III, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **OPINION** |
| | ) | |

**BEFORE: SILER, MOORE, and STRANCH, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Following a lengthy investigation by law enforcement, a grand jury charged Defendant Samuel Steel with one count of conspiracy to distribute heroin and eight counts of distributing heroin. Pursuant to a plea agreement, Steel pleaded guilty to one count of distributing heroin and, in exchange, the government dismissed the remaining counts. The main issue at sentencing was whether the district court should apply a two-level enhancement to Steel's guideline offense level on the ground that Steel maintained a premises for the purpose of distributing a controlled substance under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(12). The district court applied the two-level enhancement, but expressly found that it would order the same sentence—188 months of imprisonment—even without the enhancement. On appeal, Steel argues that the district court's application of the enhancement was improper, and the error was not harmless because, without the enhancement,

Steel would be eligible for a sentence reduction based on a recent amendment to the drug-quantity guidelines. We disagree and, for the following reasons, **AFFIRM** the district court's sentence.

## I. BACKGROUND

Throughout most of 2011, law enforcement officers in Kalamazoo, Michigan investigated Defendant Steel's involvement in the distribution of heroin. Pursuant to the investigation, officers orchestrated "controlled buys" on thirteen separate occasions by using a confidential informant ("CI") to purchase heroin from Steel. R. 87 (PSR at 4–5) (Page ID #316–17). Of these thirteen buys, the Presentence Investigation Report ("PSR")[1] indicates that the CI contacted Steel and then purchased heroin from him seven times at 1901 Douglas Street; three times at "Mr. Steel's residence"; and three times at different locations throughout Kalamazoo. *Id.* at 5 (Page ID #317). In its sentencing memorandum, the government asserted that law enforcement officers confirmed that "Mr. Steel's residence" as noted in the PSR was 1901 Douglas Street. R. 100 (Gov't Sen'g Mem. at 2) (Page ID #376). Steel did not contest this fact before the district court, nor did he contest that he lived with his wife at 1901 Douglas Street. Law enforcement officers also executed a search warrant at Steel's 1901 Douglas Street residence. R. 87 (PSR at 6) (Page ID #318). Pursuant to the search, officers seized three boxes of ammunition, a firearm, and a small amount of "suspected heroin in foil." R. 59-1 (Search Warrant Tabulation at 6)

---

[1]Steel does not contest these facts set forth in the PSR.

2

(Page ID #174); R. 52 (Mem. Supp. Defs. Mot. to Suppress at 3) (Page ID #122).  Steel's wife told officers that she owned the seized firearm.  R. 87 (PSR at 6) (Page ID #318).

In a nine-count indictment, a grand jury charged Steel with one count of conspiracy to distribute one kilogram or more of heroin from 2008 to 2011 and eight counts of distributing heroin.  R. 1 (Indictment) (Page ID #1).  Pursuant to a plea agreement, Steel pleaded guilty to one count of distributing heroin (Count 4), and the government dismissed the remaining counts.  R. 79 (Plea Agreement) (Page ID #271).

For sentencing purposes, the parties agreed that Steel was responsible for distributing between one and three kilograms of heroin between 2009 and 2011, based on relevant conduct relating to the conspiracy charge.  R. 87 (PSR at 7) (Page ID #319).  This yielded a base offense level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4).  *Id*. at 7–8 (Page ID #319–20).  Because a majority of the controlled buys occurred at Steel's 1901 Douglas Street residence, the PSR recommended a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance under § 2D1.1(b)(12).  *Id*. at 8 (Page ID #320).  The PSR also recommended subtracting three levels for acceptance of responsibility.  *Id*.  The PSR determined that Steel's criminal history score of fifteen placed him in Criminal History Category VI; moreover, the PSR also determined that Steel was a career offender based on his criminal history, which also placed him in Criminal History Category VI.

At sentencing, Steel objected only to the two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance.  R. 104 (Sen'g Hr'g Tr. at 7–9)

(Page ID #395–97). Steel argued that the enhancement was not appropriate because the "primary purpose" of 1901 Douglas Street was a residence for Steel and his family, not drug distribution. *Id*. at 7–8 (Page ID #395–96). Steel also pointed to the small amount of heroin that was sold from 1901 Douglas Street (1.56 grams), the fact that the search of the residence produced no evidence of drug distribution, and that all drug transactions occurred outside of the house. *Id*. In addition, Steel requested a two-level downward variance based on an amendment to the guidelines that would become effective November 1, 2014 and would lower the offense level from 32 to 30 based on the quantity of drugs at issue. *Id*. at 13–14 (Page ID #401–02). Steel did not object to the PSR's career offender determination or that his criminal history score placed him in Criminal History Category VI.

The district court sentenced Steel on May 14, 2014. Consistent with the PSR, the district court rejected Steel's objection and applied the two-level premises enhancement on the grounds (1) that the sale of heroin at 1901 Douglas address was not isolated, citing "10 occasions that law enforcement documents of controlled buys" at that address; and (2) that Steel expressly instructed the CI to come to his residence to purchase the drugs. *Id*. at 11–12 (Page ID #399–400). The district court then calculated the guideline range. Pursuant to the drug-quantity guideline effective at the time of sentencing—the version of § 2D1.1(c)(4) effective November 1, 2013—the court started with base offense level 32. The court assessed the two-level premises enhancement and subtracted three levels for accepting responsibility, which produced an adjusted offense level of 31. *Id*. at 5 (Page ID #393). This, combined with Criminal History

4

Category VI, provided a sentencing range of 188 to 235 months. *Id*. The district court noted that, although Steel qualified as a career offender, § 4B1.1(b) required using the adjusted offense level from § 2D1.1 because the career-offender guideline scored lower than the offense level under the drug-quantity table. *Id*. Nevertheless, the district court determined Steel's sentencing range under the career-offender guideline as an "alternative calculation"—starting with a career-offender offense level of 32 per § 4B1.1(b)(3), subtracting three levels for accepting responsibility, and applying Criminal History Category VI, left a guideline range of 151–188 months. *Id*. at 5, 12 (Page ID # 393, 400). The district court then denied Steel's motion for a variance based on the not-yet-effective amendment to the guidelines because of Steel's lengthy criminal history, particularly, his history as a drug dealer. *Id*. at 21 (Page ID #409).

Based on these findings and calculations, along with the court's assessment of the 18 U.S.C. § 3553 factors, the district court sentenced Steel to 188 months of imprisonment. In doing so, the district court noted that the 188-month sentence was the low end of the guidelines as calculated with the two-level premises enhancement (188–235 months), but also the high end without the enhancement based on the career-offender-guideline range (151–188 months). *Id*. at 18 (Page ID #406). The court explained that even if it hypothetically would have granted Steel's motion regarding the enhancement, it would have sentenced Steel to the high end of the career-offender-guideline range because "this is one of those cases where I think Mr. Steel's conduct over the course of his life has well earned the career-offender designation." *Id*. at 18–19 (Page ID #406–07). As a result, the district court concluded that Steel's criminal history "would keep

me at the 188 months whether I get at it from the low end of the guidelines where I am today or high end of the guidelines on the defense view. Either way, I think 188 months is a balance of all the guideline and Section 3553 factors in this case." *Id*. at 19–20 (Page ID #407–08).

On appeal, Steel challenges only the district court's application of the two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance.

## II. ANALYSIS

Under § 2D1.1(b)(12), a defendant convicted of a federal crime who "maintained a premises for the purpose of manufacturing or distributing a controlled substance" is subject to a two-level enhancement. U.S.S.G. § 2D1.1(b)(12). We apply the enhancement to a defendant who "(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). We have not decided the standard of review for assessing § 2D1.1(b)(12) enhancements. *See United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014).

We need not determine the proper standard of review or the applicability of the two-level enhancement, however, because we hold that, even if the district court erred by applying the enhancement, the error was harmless. "A sentencing error is harmless if we are certain that the error did not affect the district court's selection of the sentence imposed." *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (internal quotation marks omitted). Indeed, "[t]here can be no harmless error unless the appellate court can determine from the record that the same sentence would be imposed on remand." *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir.

2009). To meet this burden, the government "must demonstrate 'to the Court *with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence.'" *Id.* (quoting *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007) (emphasis in original)).

Here, the district court made clear that it would have sentenced Steel to 188 months regardless of its decision regarding the § 2D1.1(b)(12) enhancement. The district court stated that Steel's 188-month sentence, calculated with the two-level enhancement, was at the low end of the 188–235 month guideline range; without the enhancement, the court would have sentenced Steel to the high end of the 151–188 career-offender range because Steel's career-offender designation was "well earned" based on his criminal history. R. 104 (Sen'g Hr'g Tr. at 18–19) (Page ID #406–07). So, according to the district court, Steel's sentence would be "188 months whether I get at it from the low end of the guidelines where I am today or high end of the guidelines on the defense view. Either way, I think 188 months is a balance of all the guideline and Section 3553 factors in this case." *Id.* at 19–20 (Page ID #407–08). Under these circumstances, we have found any misapplication in applying an enhancement harmless. *See United States v. McCarty*, 628 F.3d 284, 294 (6th Cir. 2010) ("[T]he district court indicated that its sentence would have been the same irrespective of the improper application of [the sentencing guidelines], and its error was thus harmless."); *United States v. Obi*, 542 F.3d 148, 156 (6th Cir. 2008) (holding the district court's sentencing enhancement "harmless because the sentencing judge explicitly stated that he would impose the same sentence on alternative grounds."); *United States v. Ward*, 506 F.3d 468, 477 (6th Cir. 2007) ("[A]ny error in applying said enhancement

would be a harmless error that does not require a remand because the district court would have sentenced Cook to 294 months regardless of the enhancement at issue."). This is particularly true where, as here, the alternative sentence was within the guideline range (*i.e.*, the 188-month sentence fell within the guideline range regardless of the enhancement), *see McCarty*, 628 F.3d at 294, and Steel does not otherwise argue that 188 months is an unreasonable sentence. As a result, even if the district court improperly applied the two-level enhancement, the error was harmless.

To counter this, Steel argues that the error was not harmless because, "had this correct guideline scenario played out, Mr. Steel would now be eligible to file an 18 U.S.C. § 3582(c)(2) motion for a two-level reduction in his guideline range due to the recent changes in the Drug Quantity Table" set forth in Guideline Amendment 782, which took effect on November 1, 2014. Appellant Reply at 1–2. Steel's argument is as follows: without the two-level enhancement, the sentencing range would have been calculated under § 2D1.1 rather than § 4B1.1(b)(3) because both ranges are the same—offense level 32, less three levels for accepting responsibility at Criminal History Category VI—and the career-offender offense level applies only if it "*is greater* than the offense level otherwise applicable." U.S.S.G. § 4B1.1(b) (emphasis added). Thus, the argument goes, Steel would be eligible for a sentence reduction under § 3582(c)(2) and Guideline Amendment 782, which lowered the § 2D1.1(c) base offense level involving between one and three kilograms of heroin from 32 to 30. *Compare* U.S.S.G. § 2D1.1(c)(4) (effective Nov. 2013) *with* U.S.S.G. § 2D1.1(c)(5) (effective Nov. 2014). This would make application of

the two-level premises enhancement not harmless because the new advisory guideline range (offense level 30, less three levels at Criminal History Category VI) would be 130–162 months, and Steel would be eligible for the sentence reduction under § 3582(c)(2).

We disagree. Section 3582(c)(2) allows a district court to reduce a term of imprisonment that is (1) "based on" a sentencing range that was lowered by the Sentencing Commission (2) "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The applicable policy statement is U.S.S.G. § 1B1.10(a)(2), which states that a sentence reduction is permitted where an amendment listed in § 1B1.10(d) has "the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2) (Nov. 2014). Here, the district court made clear at the sentencing hearing that it was applying the two-level enhancement and sentencing Steel "based on" the drug-quantity guidelines set forth in § 2D1.1. *See United States v. Hameed*, 614 F.3d 259, 264 (6th Cir. 2010) ("In determining whether a sentence was 'based on' a subsequently lowered guideline range . . . we look to what the district court actually said and did at the original sentencing.") (internal quotation marks omitted). And the base offense level applied by the district court set forth in § 2D1.1(c)(4) was changed pursuant to Guideline Amendment 782, an amendment listed in § 1B1.10(d). Thus, in determining whether the district court's error was harmless (again, assuming there was error, without so holding), we must determine whether Guideline Amendment 782 would lower Steel's "applicable guideline range."

We hold that it would not. The guidelines define the "applicable guideline range" as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a)." U.S.S.G. § 1B1.10 cmt. n.1(A); *United States v. Joiner*, 727 F.3d 601, 606 (6th Cir. 2013) ("[T]he Application Note makes clear that the 'applicable guideline range' is the range that results from applying § 1B1.1(a) in its entirety."). Section 1B1.1(a) states that courts should assess the appropriate guideline range by, among other things, determining the offense level by applying appropriate specific offense characteristics and adjustments as necessary to the applicable base offense level. *See* U.S.S.G. § 1B1.1(a)(1)–(8). Furthermore, in assessing whether a sentence reduction is proper, "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1) (Nov. 2014). Moreover, a sentence reduction is not authorized if the amendment "is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range *because of the operation of another guideline or statutory provision*." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added).

Applying these principles here, Steel's argument fails because Guideline Amendment 782 would not lower Steel's "applicable guideline range" without the two-level premises enhancement. Calculating the amended guideline range under § 1B1.1(a), Steel's base offense level pursuant to Guideline Amendment 782 would be 30; after subtracting three levels for accepting responsibility, this leaves an adjusted offense level of 27 and a guideline range of 130–

162 months. But the district court found that Steel was a career offender, a designation Steel does not contest on appeal. As a career offender, Steel's base offense level under § 4B1.1(b)(3) is 32, which, factoring in acceptance of responsibility, leaves Steel with an adjusted offense level of 29 and a guideline range of 155–188 months. This is important because § 4B1.1(b) states that the career-offender offense level "shall apply" if the offense level "is greater than the offense level otherwise applicable." U.S.S.G. § 4B1.1(b). Thus, by "operation of another guideline . . . provision," U.S.S.G. § 1B1.10 cmt. n.1(A), the § 4B1.1(b)(3) career-offender offense level controls because it is greater than the drug-quantity offense level under Guideline Amendment 782. *See United States v. Stevenson*, 749 F.3d 667, 670 (7th Cir. 2014) *cert. denied,* 135 S. Ct. 1011 (2015) (applying career-offender offense level set forth in § 4B1.1(b) in holding that a reduction in sentence was improper under § 3582(c)(2) and § 1B1.10 despite amendment to guidelines); *United States v. Crawford*, 522 F. App'x 758, 760 (11th Cir. 2013) (same); *United States v. Waters*, 648 F.3d 1114, 1117–18 (9th Cir. 2011) (same).

Consequently, the applicable guideline range for purposes of § 1B1.10(a)(2) is 155–188 months. Thus, as stated above, because the district court expressly found that it would sentence Steel to 188 months under the career-offender range—which is, of course, within the 155–188 month range—any error in applying the two-level § 2D1.1(b)(12) enhancement was harmless.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence.