KAREN NELSON MOORE, Circuit Judge,
dissenting.
I dissent with respect to the majority’s holding affirming summary judgment as to the Plaintiffs’ equal protection claim and would remand this case to the district court for further proceedings.
The issue is whether the Grosse Pointe Public School System Board of Education’s (the “Board”) attendance-boundary line that forces the Plaintiffs—who live in Grosse Pointe Farms (the “Farms”), geographically located in the southern part of the school district—to attend Grosse Pointe North High School “bears a rational relation to some legitimate end.” League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 530 (6th Cir. 2007) (quoting Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)). The original supposed rational basis for the boundary line was the Board’s 1967 decision to “establish ] the high-school attendance areas along existing elementary-school lines.” Slip Op. at 13. But, the high-school-boundary line has not been tied to the number of elementary schools since 1984—in that year, one of the elementary schools closed, leaving four elementary schools in the north and five in the south. R. 16-1 (Fen-ton Aff. at 2) (Page ID #269). So the number of elementary schools has not been a rational basis for the high-school boundary for over thirty years.
Despite this, the majority claims that the Board retained the 1967 attendance-boundary line even after the 1984 school closing based on “administrative convenience.” Slip Op. at 13. In particular, the majority speculates that it is “plausible” *725 that the Board did not want to divide the remaining odd number of elementary schools after the 1984 school closing; that it is “conceivable” that the Board kept the boundary intact to “minimize any disruption” caused by the school closure; and that continued adherence to the 1967 boundary line allowed parents whose children attended the closed elementary school to send their children to the high school previously assigned by the 1967 policy. Id. at 13-14. For these reasons, the majority holds that the 1967 policy establishing the boundary line based on the number of elementary schools continued to provide a rational basis for the attendance-boundary line even after the 1984 school closure.
Even if these bases were true in 1984, however, the Defendants expressly abandoned any claim that the 1967 policy or the number of elementary schools is a rational basis for the boundary line today. Before the district court, the Defendants argued that the 1967 school-board decision to draw the lines based on the number of elementary schools was the rational basis for the boundary line. But when asked at oral argument in this case how the number of elementary schools could continue to provide a rational basis for the boundary line following the school closure in 1984, the Defendants responded:
The fact that it closed, I think, in the mid-80s ... if it had been that way at the time in 1967, it might have done something, it might have done something different. In 1995, when the Board amended its transfer policy to prevent, to preclude transfers once these numbers were hit, the 1,500 or the 300 student gap, the number of elementary schools was no longer an issue at that point, it was an enrollment issue, and it was a balancing of enrollment issue.
Oral Arg. at 19:57-20:49 (emphasis added). Thus, the Defendants conceded that by 1995 the number of elementary schools was no longer a rational basis for the boundary line. Rather, the Defendants made clear that, starting in 1995, the Board used the 1967 boundary line in conjunction with its transfer policy as a way to balance enrollment.
Thus, the Defendants have disclaimed any argument that “administrative convenience” based on the 1967 policy and the closure of the elementary school in 1984 provides a rational basis for the boundary line. Indeed, we have consistently recognized that parties may abandon a particular position during oral argument. See, e.g., Shoemaker v. City of Howell, 795 F.3d 553, 568 (6th Cir. 2015) (because the plaintiff “explicitly disclaimed the notion of trespass during oral argument before this court, ... [w]e therefore have no need to deal with th[is] issue[ ].”); Grumbley v. Burt, 591 Fed.Appx, 488, 501 (6th Cir. 2015) (“[Although the State originally argued that, under the concurrent sentence doctrine, this Court should not review Grumbley’s ineffective assistance of counsel, claim, the State abandoned this contention at oral argument.”); United States v. Duval, 742 F.3d 246, 255 (6th Cir. 2014) (“The [defendants] have waived review of this issue by conceding at oral argument that Marcinkewciz controls and forecloses their arguments.”); United States v. McCarty, 628 F.3d 284, 289 (6th Cir. 2010) (“At oral argument, the government abandoned seeking plain error review, so we examine the reasonableness of McCarty’s sentence for abuse of discretion.”); United States v. McMichael, 377 Fed.Appx. 529, 531 (6th Cir. 2010) (“[Defendant’s] counsel expressly disclaimed that remedy at oral argument. We therefore will not review the argument.”). And, although courts may hypothesize plausible justifications for a policy that were not raised by a party, Am. *726 Exp. Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 690 (6th Cir. 2011), we should not breathe new life into an argument that was expressly disclaimed at oral argument. In other words, even though we may speculate as to possible motivations for a policy, we may not uphold a policy based on a justification that the state expressly admits was not the basis for that policy.
Consequently, we are left with Defendants’ claim that, beginning in 1995 and continuing to today, the rational basis for the boundary line is to balance enrollment between the north and south high schools. Enrollment balance—along with the collateral effects of the balance (e.g., class size, class offerings, staffing, resource preservation, etc.)—is a rational basis for the attendance-boundary line. But this is where the Plaintiffs’ request for discovery regarding transfer statistics becomes important. The Plaintiffs argued to the district court that, to resolve a disputed issue of fact regarding whether the basis for the boundary line is to balance enrollment, the Plaintiffs needed discovery detailing the number of students permitted to transfer from the northern area to the south high school per year. “[The Plaintiffs] needed that number to make a point that the reason for excluding the Plaintiffs from the South High School is not to balance the enrollment levels at the two high schools because if that is the case, they would not be granting dozens of trarlsfers to students that otherwise would be attending the North High School.” R. 33 (Mot. Hr’g at 5-6) (Page ID 623-24). In its opinion granting summary judgment, the district court noted that the Defendants, “[somewhat curiously,” did not include the transfer statistics in its filings. R. 29 (D. Ct. Op. at 8 n.8) (Page ID #585). Then, in granting summary judgment, the district court did not rely on enrollment balance to find the boundary line constitutional—instead, it relied solely on the 1967 decision to tie the boundary to the elementary school zones, id, at 20-21 (597-98), which, again, the Defendants now concede was not the rational basis for the boundary line starting in 1995.
Thus, the district court did not rule on whether enrollment balance is a rational basis for the attendance-boundary line. For good reason—the Plaintiffs requested, but (because the cáse was in its infancy) did not have an opportunity to receive, discovery that could negate that rational basis. For example, if the school district granted transfers from the north high school to the south in great numbers and with little showing of need, enrollment balance may not rationally explain the school district’s continued decision to carve the northwest corner of the Farms out of the south attendance area. And because the district court did not rely on enrollment balance as a basis for finding the attendance areas constitutional, the fact that the Plaintiffs consented to treating the Defendants’ motion as one for summary judgment is immaterial. In addition, because the Plaintiffs did not have any opportunity to receive discovery as to this issue, this court should not rely on enrollment balance in the first instance in affirming summary judgment, Instead, the district court should resolve this issue initially, after the Plaintiffs are given the opportunity to seek discovery that could negate the Defendants’ purported rational basis for the policy.
For these reasons, I would VACATE the district court’s grant of summary judgment as to the equal protection claim and REMAND the case to the district court for discovery as to this claim. I respectfully dissent.