NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0431n.06

No. 22-5930

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 10, 2023
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
    Plaintiff - Appellee, )
)
v. )
)
STEPHEN JAMES WALTERS, )
    Defendant - Appellant. )
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

OPINION

Before: BATCHELDER, GRIFFIN, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Stephen Walters pleaded guilty to possessing a firearm as a convicted felon. In this appeal, Walters challenges the district court's application of a two-level enhancement for having possessed at least three but fewer than eight firearms. Because the district court's reasoning demonstrates that it would have imposed the same sentence regardless of the enhancement, we conclude that the alleged error is harmless and affirm.

**I. Background**

On the morning of March 7, 2021, a Metropolitan Nashville Police Department officer stopped Stephen Walters for crossing over the center-lane line and driving in the wrong direction. As the vehicle slowed to a stop, the officer saw someone inside the car toss a black handgun out of the front passenger-side window. Walters explained that the handgun (a Taurus Armas model G3 9x19 pistol) belonged to his girlfriend, and that he had thrown it from the vehicle. Walters had been convicted of a felony offense in 2010. He pleaded guilty in this case to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and proceeded to sentencing.

The United States Probation Department's presentence report indicated that Walters had possessed a firearm on more than one occasion in the weeks leading up to his March arrest. The report noted that Walters posted several pictures and videos of himself in possession of various firearms to his Facebook page, suggesting that Walters possessed three separate firearms in the seven weeks prior to his arrest. In light of these Facebook posts, the presentence report recommended a two-level sentencing enhancement under § 2K2.1(b)(1)(A) of the Sentencing Guidelines because Walters's offense involved at least three but fewer than eight firearms.

At sentencing, Walters objected to the enhancement, but the district court decided to apply it. The court found that the government had met its burden to show that the guns in Walters's Facebook posts were real. The court also concluded that the prior firearm possessions satisfied the three-factor "relevant conduct" standard, which requires that prior conduct be similar, regular, and close in time to the charged offense before a district court can consider the conduct in its sentencing calculation. *See United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018). Regarding regularity and timing, the district court found that Walters possessed firearms on multiple occasions at least two and at most seven weeks before his arrest. And, after finding that the same Taurus pistol Walters threw from his car window appeared in one of his recent posts, the district court held that Walters's prior possessions were sufficiently similar to his charged offense. Having determined that the prior possessions constituted relevant conduct, the district applied the two-level enhancement. The resulting Guidelines range was 57 to 71 months, as opposed to 46 to 57 months without the enhancement. Ultimately, the district court chose to vary downward by sentencing Walters to 37 months and stated that it would have reached this sentence regardless of whether it applied the enhancement.

On appeal, Walters claims the district court erred in applying the two-level enhancement. First, he disputes the district court's factual finding that the guns in the posts were real and not props. Second, he insists that the prior firearm possessions do not constitute "relevant conduct" and that the court was not permitted to consider them in sentencing. Specifically, Walters argues that the government (and court) improperly relied on uninformative metadata extracted from his phone to determine the dates on which the images and videos of him with various firearms were taken. According to Walters, this metadata did not accurately record the creation dates of images and videos, so it cannot provide useful insight into the regularity and timing of prior firearm possessions. Indeed, Walters undermines the metadata's credibility by pointing out that one of the photographs was posted to Facebook two years before the metadata upon which the government relied registered its existence and assigned it a "creation" date. And because even the government concedes its evidence of similarity is weaker than its proof of regularity and timing, Walters concludes that the government failed to show that the firearm possession pictured in his Facebook posts is "relevant conduct."

## II. Discussion

We do not address whether the district court erred by applying the enhancement, because any potential error was "harmless and do[es] not require a remand for re-sentencing." *United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007).

Our precedent requires us to exercise thoughtful caution before deciding that a purported mistake in calculating the appropriate Guidelines range is harmless. The Guidelines calculation is the "premise from which the district court must begin its sentencing analysis," so a calculation error means "that an appellate court would have a difficult time saying that the result would have been unchanged." *United States v. Anderson*, 526 F.3d 319, 330 (6th Cir. 2008). Accordingly, we

have observed that a calculation error is a "significant procedural error" that "can rarely, if ever, be found harmless." *Id*. (citation and internal quotation marks omitted); *see also Molina-Martinez v. United States*, 578 U.S. 189, 198–99 (2016).

But error alone is not always enough to show that a defendant was harmed. In limited circumstances, we have "found a defendant's substantial rights unharmed where the record below indicates with certainty that the defendant's sentence would be no different absent the error alleged." *United States v. Johnson*, 467 F.3d 559, 565 (6th Cir. 2006). A remand for resentencing is not required if "'we are certain that any such error was harmless—*i.e.*, any such error did not affect the district court's selection of the sentence imposed.'" *United States v. Ziesel*, 38 F.4th 512, 515-16 (6th Cir. 2022) (quoting *United States v. Hazelwood*, 398 F.3d 292, 801 (6th Cir. 2005)); *see also United States v. McCarty*, 628 F.3d 284, 294 (6th Cir. 2010).

We evaluate harmless error by closely examining the sentencing record. An explicit statement by the district court confirming that it "would impose the same sentence on alternative grounds" is a persuasive signal that any calculation error was harmless. *United States v. Obi*, 542 F.3d 148, 156 (6th Cir. 2008); *see also McCarty*, 628 F.3d at 394; *Ward*, 506 F.3d at 477; *United States v. Cobb*, 766 F. App'x 226, 231 (6th Cir. 2019). But a "standard-issue pledge that the district court would have come to the same result" intended to "thwart a deserved resentencing" does not influence our harmless-error analysis. *United States v. Montgomery*, 969 F.3d 582, 583 (6th Cir. 2020). The court's statements must go "beyond unadorned boilerplate to explain how the district court's properly invoked discretion reasonably arrives at the same sentence." *United States v. Lucas*, Nos. 19-6390, 19-6392, 19-6393, 19-6394, 2021 WL 4099241, at *13 (6th Cir. Sept. 9, 2021).

Assuming arguendo that the district court erred here by applying a two-level enhancement, the error is harmless. The district court's reasoning during the sentencing hearing leaves no doubt that it would have imposed the same sentence without the enhancement. This is in part because the district court "explicitly stated that [it] would impose the same sentence on alternative grounds," *Obi*, 542 F.3d at 156:

> If the guideline calculation was wrong, the Court would have imposed the same sentence under Section 3553(a) considering those factors as a whole. In particular, I would just note that even if the enhancement had not been applied, we would—I think I would still be varying below the guidelines as—the guideline range suggested by [Walters's counsel] in his objection.

Sentencing Tr., R. 83 at 47.

But our inquiry does not end there. We also evaluate whether such a statement is mere boilerplate to make "certain" that the enhancement did not "affect the district court's selection of the sentence imposed." *Ziesel*, 38 F.4th at 515–16.

Here, the district court provided an extensive non-Guidelines justification for its sentence, assuring us that any alleged error is harmless. Its statement that it would have imposed the same sentence irrespective of the enhancement was not an unexplained or unsubstantiated disclaimer. Instead, it is supported by the district court's lengthy discussion of the 18 U.S.C. § 3553(a) sentencing factors. The district court addressed each factor separately, explaining how it justified either a more severe sentence or counseled in favor of leniency. For example, when reflecting on the history and characteristics of the defendant as the first factor under § 3553(a) instructs, the district court acknowledged the "numerous domestic violence convictions in [Walters's] past" but paused to clarify that "almost all of those are pretty far into [the] past;" noted the "one burglary conviction from some time ago;" observed that Walters had "encountered violence as a child, watching someone close . . . die from [a] gunshot wound;" commended Walters's parents for doing

"the best they could to raise [Walters] well" in a "good stable home" with a "good upbringing;" recognized that Walters suffered from "mental health challenges . . . likely some PTSD;" and praised Walters for "maintain[ing] good employment," "[being] involved in [his] children's lives," and "hav[ing] done well on pretrial release." Sentencing Tr., R. 83 at 40-41. The thoroughness of the § 3553(a) analysis reinforces our view that the district court arrived at Walters's sentence through careful consideration of the sentencing factors and that those factors accounted for so much of the district court's decision that any error in calculating the Guidelines range would not have changed the outcome.

Additional elements of the district court's reasoning further indicate that the court would have imposed the same sentence regardless of the enhancement. First, the district court identified the specific mitigating circumstances that persuaded it to vary downward, emphasizing Walters's "mental health issues, his conduct on pretrial release, and some exposure to violence at a young age that likely led to some of the mental health issues, particularly PTSD." *Id.* at 47. The district court emphasized that among all the facts it considered in its § 3553(a) analysis, these key pieces of information drove its sentencing decision. Its reasoning was not generalized; it was detailed and thorough.

Second, the district court varied below the Guidelines range calculated without the enhancement. Although this fact is not dispositive on its own of whether any error in applying the enhancement is harmless, it does demonstrate that the district court did not feel constrained by the Guidelines range. We have previously held that, against the backdrop of other evidence indicating harmless error, we are "especially" convinced where a defendant's sentence falls within either of the proposed Guidelines ranges. *McCarty*, 628 F.3d at 294; *see also United States v. Steel*, 609 F.

App'x 851, 855 (6th Cir. 2015). The same principle applies here with even greater force because the district court chose a sentence that varied below both possible ranges.

Walters argues that "the district court's statement that it would have given Mr. Walters the same sentence regardless of the relevant conduct determination should carry no weight because these words are standard in this judge's sentencing colloquies"—in other words, the statement is the district court's boilerplate language. Reply Br. at 7. Whether this district court has included boilerplate language in previous cases is beyond the scope of our review, but the district court's statement in this case is not boilerplate. The district court did not simply recite a talismanic sentence designed to trigger our harmless error doctrine and prevent an otherwise deserved resentencing. The court's individualized assessment of Walter's circumstances—his childhood exposure to violence, his mental-health issues, and his exemplary behavior on pretrial release—could not appear in sentencing colloquies involving different defendants. The district court's statement rests on reasoning that is sufficiently detailed, thorough, and specific to show that the sentencing judge would have selected the same sentence even without the enhancement.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.