NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0110n.06

No. 08-5146

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 18, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )
v.                                      )   ON APPEAL FROM THE UNITED
                                        )   STATES DISTRICT COURT FOR THE
JAMES C. HARDISON,                      )   WESTERN DISTRICT OF KENTUCKY
                                        )
        Defendant-Appellant.            )


Before:  GIBBONS, SUTTON and WHITE, Circuit Judges.


        SUTTON, Circuit Judge.  James Hardison challenges his 81-month sentence for conspiring

to defraud mortgage lenders and for identity theft.  We affirm.


I.


        In November 2006, Hardison and three co-conspirators used stolen identities to apply for

three home mortgages.  The conspirators first used the stolen identities to acquire false identification

documents.  Under a false identity, Hardison, a mortgage broker, posed as a home buyer and applied

for a $403,538 loan from Countrywide Home Loans to buy a Louisville house.  The lender delivered

the funds to a title service, but Hardison never received the funds because the closing attorney

discovered problems with the title, and the deal fell through.

A day after applying for the first mortgage, Hardison applied for a $303,705 loan from Homecoming Financial to buy a second Louisville home, again using a false identity. At the closing, Hardison posed as the buyer, and a second co-conspirator posed as the seller. The conspirators received $290,297 from this fraudulent sale, which the bank never recovered.

Shortly thereafter, Hardison applied for a $298,724 loan from Wells Fargo to buy the same house he had "bought" the day before. Hardison used the same false identification to pose as the buyer at the closing, and the same co-conspirator posed as the seller. After the closing, the conspirators deposited $294,567 in a BB&T Bank account recently opened by a third co-conspirator using false identification. When attempting to transfer the money out of the account, the conspirators triggered an internal bank investigation, which uncovered the identity theft. BB&T returned the funds to Wells Fargo, and, when two of the conspirators came to the bank several days later to try to withdraw the funds, the police arrested them. They confessed to the scheme and implicated Hardison and the remaining co-conspirator. The United States Secret Service, the jurisdiction of which covers financial crimes, arrested Hardison on December 28, 2006.

A federal grand jury indicted Hardison for conspiracy to commit bank and wire fraud as well as identity theft. *See* 18 U.S.C. §§ 1028A, 1343–44, 1349. After his three co-conspirators pled guilty to comparable charges, Hardison chose to go to trial. A jury convicted Hardison of both counts. The trial court sentenced Hardison to 81 months of imprisonment, comprised of 57 months for the conspiracy and 24 months for the identify theft. Hardison challenges his conspiracy sentence on appeal.

II.

Hardison challenges the procedural reasonableness of his sentence. To satisfy this constitutional requirement of sentencing, the district court must consider the applicable guidelines range, consider the factors listed in 18 U.S.C. § 3553(a), accurately calculate the sentence and adequately explain it. *See Gall v. United States*, 552 U.S. 38, 41, 51 (2007). The district court fell short on this front, Hardison charges, because it did not allow him to introduce evidence showing "he did not intend . . . to cause a loss in the amount of the loans sought." Hardison's Br. at 10–11. Clearly erroneous review applies to a district court's loss calculation, and fresh review applies to its legal interpretations. *See United States v. Erpenbeck*, 532 F.3d 423, 433 (6th Cir. 2008).

Problem one with this argument is that Hardison never asked for an opportunity to present this evidence or for that matter any other evidence in support of his sentencing-mitigation arguments. A few minutes after the proceeding started, the district court asked Hardison whether he wanted to object to the Pre-Sentence Report, which recommended that Hardison's "intended loss"—the amount he intended to swindle—should be $1,005,967. PSR at ¶ 20. Hardison claimed that the report's figure "was not supported by the evidence at trial," Sent. Tr. at 3, because he personally received only about $10,000 and because he allegedly "took affirmative steps to renounce . . . his participation" in two of the loans, *id.* at 4. Hardison never asked the district court at that point (or any other) for leave to introduce additional evidence regarding the "intended loss" but instead chose to rely solely on the evidence that already had been introduced at trial. Any complaint that the

district court refused to let Hardison introduce evidence in support of his sentencing arguments thus misapprehends what happened below.

Problem two with this argument is that it merely represents another way of attacking the district court's calculation, not the evidence permitted to be introduced in support of it. No one had any reason to doubt the significance of the PSR's recommendation. An "intended loss" calculation of $1,005,967 mattered because fraud resulting in a loss of more than $1,000,000 receives a 16-point increase in the defendant's base offense level, while a $400,000 to $1 million intended loss calculation leads to a 14-point increase. *See* U.S.S.G. § 2B1.1(b)(1); *see also* § 2B1.1 cmt. 3(A) ("[L]oss is the greater of actual loss or intended loss."). In failing to offer any other evidence regarding the calculation, Hardison left it to the district court to assess the evidence already introduced on this score, namely the evidence introduced in the just-concluded trial. As the district court saw it and as the PSR recommended, the "intended loss" was the sum of the amounts requested in the three fraudulent loan applications: $403,538, $303,705 and $298,724. That is hardly an unusual way to look at the evidence. And as appellate judges who must rely on reading cold transcripts rather than watching live testimony, we are in no position to second guess this reasonable assessment of the evidence—made by the trial judge who saw it introduced and who saw the jury rely on it in convicting Hardison of conspiring to defraud the mortgage lenders on each of the loans.

Problem three with this argument is that no authority supports it. The one case on which Hardison relies, *United States v. Confredo*, 528 F.3d 143 (2d Cir. 2008), does not help him. *Confredo* dealt with a loan broker who submitted more than 200 fraudulent loan applications on

behalf of real, though not credit-worthy, clients. *Id.* at 145. The court decided that the defendant was entitled to argue that the "intended loss" of his fraud was lower than the cumulative face value of the 200 applications because (1) he expected the banks to turn down some percentage of the applications and (2) he expected his clients to repay some percentage of the loans. *Id.* at 152. The difference here is that Hardison made his loan applications using fraudulent identification, never claimed to expect the banks to turn him down and never claimed to intend to repay the loans. Having offered no evidence comparable to the evidence introduced in *Confredo* or for that matter identified any such evidence, Hardison is in no position to make a similar argument.

Problem four with this argument is that the district court's ultimate sentence accounted for most, if not all, of Hardison's concerns. Even though the district court rejected Hardison's arguments at sentencing and even though it made a $1 million "intended loss" calculation, it nonetheless chose to make a substantial downward variance. It ultimately chose to treat Hardison as if he had conspired to take between $400,000 and $1,000,000, which would have led to a 14-point increase, not a 16-point increase, in the calculation. It thus sentenced Hardison to 57 months on the conspiracy charge, a sentence at the bottom of the guidelines range for a $400,000 to $1,000,000 fraud and below the 70–87 month guidelines range for a $1,000,000 to $2,000,000 fraud. This variance, the district court said, ensured that Hardison did not receive a sentence disproportionate to the sentences of his co-conspirators. And this variance, the court might have added, eliminated any prejudice from the court's initial "intended loss" calculation and Hardison's arguments on appeal.

III.

For these reasons, we affirm.