**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0333n.06

Case No. 19-5069

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>JEREMY JONES,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Defendant-Appellant.</td><td>)</td></tr>
</table>

**FILED**
Jun 09, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

BEFORE: BOGGS, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. After Jeremy Jones stole the identities of over a hundred people, a jury found him guilty of aggravated identity theft and several related crimes. On appeal, Jones targets a double-jeopardy violation and challenges his sentence. We vacate one of the convictions but affirm in all other respects.

Jones convinced a few friends to give him their personal information, promising to help them improve their credit or to use the information for joint business ventures. He instead used it to take out car loans for himself. When that worked, Jones upped the game. He enlisted the help of his ex-girlfriend, Carla Daughtery, who worked at a neurology clinic in Memphis. For over a year, Daughtery periodically gave Jones the personal information of doctors, nurses, and patients at the clinic. He used it for more of the same: setting up loans, credit cards, and bank accounts in

the victims' names.  Jones promised Daughtery "big money" for her help.  R. 172 at 7.  But he kept the money for himself.

The government learned about Jones's scheme when some financial institutions reported the suspicious transactions.  After linking several of them to Jones's IP address, the government executed a search warrant at his home.  The search revealed extensive evidence tying Jones to identity theft, including a computer with the personal information of over 100 individuals, along with credit cards and loan applications in their names.  Because most of the victims were patients of the same neurology clinic, the government managed to uncover Daughtery's role in the scheme and convinced her to testify against Jones.  A grand jury indicted him on four counts:  conspiracy to commit identity theft and mail fraud, identity theft, mail fraud, and aggravated identity theft.  *See* 18 U.S.C. §§ 371, 1028(a)(7), 1028A, 1341.

Jones contacted some of the friends he had first swindled and encouraged them to change their stories.  That led to two charges of obstruction of justice.  A jury convicted Jones on all counts.

At sentencing, the court determined that Jones was responsible for losses of $1.98 million, which led to a 16-level enhancement.  *See* U.S.S.G. § 2B1.1(b)(1)(I).  With that enhancement and a few others factored in, Jones's guidelines range stood at 94 to 111 months.  *See* 18 U.S.C. § 1028A(a)(1), (b)(2); U.S.S.G. § 2B1.6.  The court imposed a within-guidelines sentence of 102 months.  Jones appeals on three grounds.

*Double Jeopardy.*  The Double Jeopardy Clause says that no one should "be twice put in jeopardy" for "the same offense."  U.S. Const. amend. V.  A defendant may be convicted of multiple crimes arising from the same course of conduct so long as each crime "requires proof of

a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see United States v. Kurlemann*, 736 F.3d 439, 452 (6th Cir. 2013).

As the government concedes, Jones's convictions for identity theft and aggravated identity theft fail the *Blockburger* test. The first three elements of each crime use the same language: (1) "knowingly transfers, possesses, or uses," (2) "without lawful authority," (3) "a means of identification of another person." *Compare* 18 U.S.C. § 1028(a)(7), *with* 18 U.S.C. § 1028A(a)(1). That leaves the fourth element. Identity theft requires that the first three elements occur "in connection with[] any unlawful activity that constitutes a violation of Federal law" or a state felony, *id.* § 1028(a)(7), while aggravated identity theft lists specific predicate federal crimes that trigger this section. *Id.* § 1028A(a)(1), (c). Because any of the federal law predicates is "a violation of Federal law," anyone who commits aggravated identity theft necessarily commits identity theft. The only two circuits to consider the question have taken this straightforward path. *See United States v. Bonilla*, 579 F.3d 1233, 1242–44 (11th Cir. 2009); *United States v. Allen*, 781 F. App'x 513, 515–16 (7th Cir. 2019). The government concedes as much.

The question is what to do next. Jones does not argue he is entitled to a full-blown re-sentencing hearing. The debate is whether we should vacate the lesser included identity-theft conviction (as the government asks) or give the district court discretion to decide which of the two offenses to vacate (as Jones asks).

There is no room for discretion. It would be an unjust windfall "to give the defendant a shorter sentence than he would have received had the government not also charged him with the less serious offense." *United States v. Peel*, 595 F.3d 763, 768 (7th Cir. 2010). That is even clearer when the less serious offense is also the lesser included one: "[I]magine convicting a person of attempted murder and of murder and punishing him only for the attempt." *Id.* Unpublished

3

decisions in our circuit have followed this approach. *United States v. Gerick*, 568 F. App'x 405, 408 (6th Cir. 2014); *United States v. Hutchinson*, 448 F. App'x 599, 603–04 (6th Cir. 2012). And the two out-of-circuit appellate decisions dealing with the same double jeopardy problem as in the case before us—overlapping convictions for identity theft and aggravated identity theft—vacated the identity-theft conviction. *See Bonilla*, 579 F.3d at 1243–44, 1246; *Allen*, 781 F. App'x at 516.

Jones does not attempt to distinguish these cases. He instead cites others where the court remanded for the district court to select which conviction to vacate. *See, e.g.*, *Rutledge v. United States*, 517 U.S. 292, 307 (1996); *Ball v. United States*, 470 U.S. 856, 864 (1985); *United States v. Ehle*, 640 F.3d 689, 699 (6th Cir. 2011). But these cases did not consider the question at hand.

*United States v. Chambers*, it is true, did face the issue and remanded to the district court. 944 F.2d 1253, 1269 (6th Cir. 1991). But in that case, due to a quirk in the (then-mandatory) sentencing guidelines, the lesser-included offense carried the greater sentence. *Id.* at 1268–69. Given that anomaly, the court took what it recognized as an anomalous approach. *Id.* at 1269.

*Consecutive sentences.* Jones argues that his aggravated-identity-theft sentence may run consecutively only to his mail-fraud sentence, apparently suggesting that it must run concurrently with his other sentences. But the aggravated-identity-theft statute says, with one exception not relevant here, "no term of imprisonment imposed on a person [for aggravated identity theft] shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law." 18 U.S.C. § 1028A(b)(2). That statute leaves no room to maneuver. Jones never explains how "any other" could be interpreted any other way.

*Loss calculation.* That leaves Jones's final challenge. Recall that the district court imposed a 16-level sentencing enhancement because Jones caused or intended over $1.5 million in total losses. U.S.S.G. § 2B1.1(b)(1)(I); *see also United States v. Mickens*, 453 F.3d 668, 672 (6th Cir.

4

2006). Jones offers several different numbers for what that loss should have been, all of them between $550,000 and $1.5 million, meaning all of them would yield a 14-level, not a 16-level, enhancement. U.S.S.G. § 2B1.1(b)(1)(H).

What matters is whether the court made a "reasonable estimate." U.S.S.G. § 2B1.1 cmt. n.3(C); *United States v. Vance*, 956 F.3d 846, 860 (6th Cir. 2020). The district court had exact numbers. Postal Inspector Susan Link calculated the loss by adding the amounts Jones spent to amounts he intended to spend: that is, the credit limits of cards Jones applied for but failed to obtain and loan amounts he sought but failed to get. *See, e.g.*, *Vance*, 956 F.3d at 861; *Mickens*, 453 F.3d at 672–73; *United States v. Hardison*, 365 F. App'x 661, 663 (6th Cir. 2010). Inspector Link obtained those numbers directly from the financial institutions. They also submitted loss confirmations, all incorporated into the pre-sentence report, and many of them had already sent representatives to testify at trial to the same effect. The court examined this evidence during a daylong hearing, much of it focused on the amount of loss. The court cut several hundred thousand dollars off the government's estimate, finding insufficient proof for several items. After thorough consideration, it landed on $1.98 million. We see no error, let alone a clear one.

The district court's thorough treatment of loss calculation separates this case from those Jones relies on. Unlike *United States v. Roberts*, the government witness explained her methodology and the judge independently considered the issue rather than simply adopting whatever number the government put forward. 919 F.3d 980, 988 (6th Cir. 2019). And *United States v. White* provides Jones no comfort for a similar reason. 492 F.3d 380 (6th Cir. 2007). We reversed a district court that had "blindly embraced the figures set forth in" the pre-sentence report. *Id.* at 416. That's not what happened here.

Jones suggests that the government could rely only on the portion of losses provided by trial testimony from representatives of the financial institutions. But he cites no cases imposing such a burden. "[T]he rules of evidence—including the general prohibition on hearsay—do not apply at sentencing." *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010); *see Vance*, 956 F.3d at 862–63. Consistent with that long-established principle, loss amounts are commonly determined by testimony from a government agent who interviewed the victims. *See, e.g.*, *McCarty*, 628 F.3d at 291; *United States v. Katzopoulos*, 437 F.3d 569, 572–73, 576 (6th Cir. 2006).

Jones also takes issue with one line item: $71,500 in potential losses from Capital One. He claims he was never tied to this loss, and that it stems from a fraudulent credit card opened by Daughtery. But none of this moves the needle anyway. Jones's $1.98 million in losses easily clears the $1.5 million bar for the sentencing enhancement.

We vacate Jones's conviction for identity theft and remand with instructions to modify the judgment accordingly. We affirm in all other respects. We also deny as moot Jones's motion for release pending appeal and his motion to withdraw counsel.