RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-1400

KEVIN IKE OBI,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00230-001—Richard A. Enslen, District Judge.

Argued: April 29, 2008

Decided and Filed: September 5, 2008

Before: BATCHELDER and SUTTON, Circuit Judges; BARZILAY, Judge.[*]

_____

**COUNSEL**

**ARGUED:** Lawrence J. Phelan, HAEHNEL & PHELAN, Grand Rapids, Michigan, for Appellant. Raymond E. Beckering, III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Lawrence J. Phelan, HAEHNEL & PHELAN, Grand Rapids, Michigan, for Appellant. Raymond E. Beckering, III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

BARZILAY, Judge. Appellant Kevin Obi ("Obi") appeals, for a second time, his sentence of 300 months imprisonment for knowingly and intentionally distributing heroin resulting in serious bodily harm or death. In the first sentencing hearing, the lower court imposed a 300 month sentence on the basis of an obstruction of justice enhancement for Obi's false statements to police officers. Obi appealed and a separate panel of this Court reversed and remanded, holding that the factual record did not support an enhancement based on obstruction. On remand, the sentencing judge reimposed the 300 month sentence, again finding that Obi obstructed the investigation. Notably, the judge stated that he would have imposed the same 300 month sentence based on Obi's egregious conduct, irrespective of any accusation of obstruction. In this second appeal, Obi argues that the district court exceeded the scope of its authority in conducting a *de novo* resentencing hearing

_____

[*]The Honorable Judith M. Barzilay, United States Court of International Trade Judge, sitting by designation.

because the Court of Appeals issued a limited remand.  Obi further claims that the district court erred in enhancing his sentence based on obstruction of justice.  The Court may review the sentencing decision of a district court pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  Because the district court acted within its discretion in conducting a *de novo* sentencing hearing and had authority to impose a 300 month sentence regardless of obstruction, the sentence is AFFIRMED.

## I.  Background

On April 19, 2004, officers from the Kent Narcotics Enforcement Team ("KNET") of Grand Rapids, Michigan arrested Obi for delivering twenty packets of heroin.  JA at 249.  The following day, Obi signed a written cooperation agreement with KNET to perform controlled purchases of drugs.  In April and May of 2004, Obi performed drug purchases and assisted authorities in apprehending several heroin dealers in the Grandville, Michigan area.  *Id*.  During this period, however, Obi continued to buy and sell heroin for himself, violating his agreement with KNET.  By August 2004, the United States Drug Enforcement Agency ("DEA") had been notified that Obi was again actively dealing heroin in the Grandville area.  On September 3, 2004, Obi and his friend, Terry Ensing ("Ensing"), went to a bar in Grand Rapids, Michigan, to meet two female acquaintances, Crystal Brow ("Brow") and Nora Lares ("Lares").  *Id*.  Obi and Ensing left the establishment at one point, but later returned and remained with Brow and Lares until the bar closed.  Brow and Lares had consumed alcohol while at the bar and both were visibly drunk.  *Id*. at 252.  Brow was on the verge of passing out and vomited outside the bar when the group exited.  After leaving the bar, the group went to the home of Obi's parents where he lived in a basement apartment.  *Id*.  Around 2:47 a.m., shortly after arriving at Obi's apartment, Brow lost consciousness.  *Id*. at 250-51.  Obi then began preparing lines of heroin for himself, Ensing, and Lares.  According to Ensing, Lares suspected that the lines were something other than cocaine and asked if the substance was Oxycontin.  *Id*. at 253.  Obi responded that it was not Oxycontin, but did not inform Lares that it was heroin.  Obi, Ensing, and Lares then snorted the lines of heroin.  *Id*. at 250.

Shortly thereafter, Obi and Ensing carried Brow, who was still unconscious, to another room so that Obi could have sexual intercourse with Lares.  Ensing went upstairs while Obi engaged in sexual intercourse with Lares.  Sometime later, Obi went upstairs and told Ensing that Lares wanted to have sex with him and mentioned that he thought Lares had stopped breathing; however he also stated that he heard Lares make snoring sounds suggesting that she was still breathing.  *See United States v. Obi*, 195 Fed. App'x 335, 337 (6th Cir. 2006) ("*Obi I*").  Ensing went downstairs to have sexual intercourse with the apparently unconscious Lares.  JA at 250.  At some point during intercourse, Ensing realized that Lares was not only unconscious but had indeed stopped breathing.  Ensing then informed Obi of her condition.

Obi and Ensing did not immediately contact 911 emergency services nor did they alert Obi's stepfather, who was sleeping upstairs at the time.  Instead, they dressed Lares, carried her out to Obi's mother's car, and drove to a nearby medical center, which was closed.  *Id.*  At this point, Obi called 911.  Shortly after 4:00 a.m., emergency responders arrived at the medical center.  *Id*. at 253.  Obi and Ensing told the police that they had not used drugs that night nor had they observed Lares using any drugs.  *Id*. at 250.  They also told officers about Brow, who was still passed out in Obi's basement.  *Id*. at 253.  At 4:51 a.m., Lares was pronounced dead.[1]

The officers, along with Obi, went to Obi's home to attend to Brow, who had to be revived and taken to the hospital to be treated for alcohol poisoning.  Brow told the officers that she did not observe any drug use that evening or hear anyone mention using drugs.  *Id*. at 200.  She did admit,

---

[1]Lares's autopsy revealed that she died from a lethal combination of alcohol and morphine derived from heroin.  *Id*. at 250.

however, that Lares made numerous trips to the bathroom while at the bar and suspected that Lares could have been using drugs. *Id*. One of the officers was aware of Obi's involvement with illegal drugs, and while questioning Obi about drug use that night, fabricated a statement from Brow to coax Obi's confession. *Id*. at 191, 207. The officer stated that Brow had told the officers that she observed the group doing lines that night. *Id*. at 191, 253. Brow never made such a statement.[2] Despite the officer's attempt to induce an admission, Obi again denied using drugs and consented to a search of his residence. *Id*. at 200, 253. The officers performed a cursory search of Obi's basement, which included inspecting trash cans and taking digital photographs. No evidence of drug use was found during the search. While in his basement, Obi thought he was suffering a panic attack and was taken to the hospital and later admitted into a mental health facility for a brief stay because of suicidal thoughts.

The local police referred this case to the DEA, but by the time investigators obtained a search warrant for Obi's basement, his mother had already cleaned the apartment thoroughly. *See Obi I*, 195 Fed. App'x at 337. She claimed that she cleaned the basement on the advice of a grief counselor, who suggested that visual reminders of the incident would have an adverse effect on Obi's mental state. JA at 250. Even though evidence was likely lost, the investigators did find heroin-related contraband, such as syringes and heroin paper folds, hidden above the ceiling tiles. *See Obi I*, 195 Fed. App'x at 337.

Several weeks later, federal investigators interviewed two individuals who indicated that Obi had resumed selling heroin after he was released from the mental health facility. JA at 251. Based on these tips, the DEA set up surveillance of Obi's residence and requested another search warrant. They observed a person enter Obi's home and leave shortly thereafter, who later admitted to buying heroin. *Id*. After obtaining the necessary warrants, the DEA agents arrested Obi that same day. Obi admitted to selling heroin after Lares' death, to having had sexual intercourse with Lares on the night she died, and that Lares was inside his apartment when she stopped breathing. *Obi I*, 195 Fed. App'x at 338. However, Obi continued to deny that he had provided Lares with drugs that night. *Id*.

On October 13, 2004, a grand jury indicted Obi for distribution of heroin to a person under 21 years of age and conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841, 846, and 859. *See* §§ 841(a)(1), (b)(1)(B)(i), (b)(1)(C), 846, 859. The government continued to interview witnesses regarding Lares' death because without evidence proving that Obi provided Lares with heroin, the government could not charge him with the higher offense of distribution resulting in death pursuant to § 841(b)(1)(C). Ultimately, the government negotiated a plea agreement with Ensing, who confirmed that Obi had provided heroin to Lares on the night she died. JA at 253. With this new information, the grand jury returned a superseding indictment adding the charge of distribution of heroin resulting in the death of Lares. On February 18, 2005, Obi pled guilty and in exchange for his cooperation, the government agreed to request a release of the mandatory minimum, which meant the court would not be required to sentence Obi to at least 20 years imprisonment. The district court granted the government's motion to release the mandatory minimum, but reserved the right to sentence above it if appropriate. *Id*. at 156, 246-247.

To determine an appropriate sentence, the court looked to the findings of the presentence investigation report ("PSR"), which calculated a sentencing guideline range of 262-327 months based on an offense level of 37 and a criminal history category of III. *Id*. at 263. Although the court adjusted the offense level down three levels because Obi had accepted responsibility, it also imposed a two level enhancement for obstruction of justice. *Id*. at 255. After hearing final arguments, the

---

[2]This factual issue was misconstrued by the Court in the first appeal and subsequently corrected by the district judge in the second sentencing hearing. *Id*. at 191.

court sentenced Obi to 300 months imprisonment, as well as mandatory substance abuse programs and a restitution penalty for funeral costs incurred by the Lares family. *Id*. at 183, 185-86. Obi appealed the sentence.

On appeal, the Court held that the factual record did not support the lower court's decision to impose a two level enhancement for obstruction of justice. *See Obi I*, 195 Fed. App'x at 341. Relying in part on the factual error mentioned above, the Court found that the officers had sufficient notice that drugs were used on the night of Lares' death. *Id*. at 340. Furthermore, the officers should have realized that Obi's basement was a potential crime scene and performed a more thorough search. *Id*. Accordingly, the Court held that Obi did not obstruct the investigation pursuant to U.S.S.G. § 3C1.1, but concluded instead that the government's investigation was only delayed and not significantly impeded by Obi's false statements concerning drug use. *Id*. at 341. The original sentence was vacated and the case remanded for resentencing. *Id*.

The sentencing court construed the appellate mandate as representing a general remand, which permitted the court to conduct a *de novo* sentencing hearing. During the resentencing hearing, the court focused its analysis on the issue of obstruction because Obi limited his claims to the proper scoring of the obstruction enhancement. It held that Obi's misrepresentations regarding the events of September 3, 2004, sufficiently satisfied the requirements for an obstruction of justice enhancement because they delayed the investigation, allowed Obi to engage in more drug transactions, caused the police to misapprehend the crime scene, resulted in the destruction of potential evidence, and made the investigation dependent on the confession of Ensing. JA at 231-232. As a result, the court reimposed the same sentence of 300 months imprisonment. The sentencing judge noted that even without the obstruction enhancement the court would have entered the same sentence based on Obi's egregious conduct. *Id.* at 241. Obi now appeals on the grounds that the resentencing hearing should have been limited to adopting the appellate court's mandate regarding obstruction. Appellant Br. 20-30. Obi argues in the alternative that the expanded record does not support the assessment of the obstruction of justice enhancement. Appellant Br. 30-37.

## II.  Discussion

### A.  Limited Versus General Remand

Obi contends that the Court issued a limited remand in his first appeal, thereby instructing the sentencing court to reverse its finding of obstruction. Appellant Br. 26. The "basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals," which may be limited or general. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999); *see also United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991). In this circuit, the criteria to establish a limited versus general remand are well settled and, pursuant to 28 U.S.C. § 2106, appellate courts have broad discretion in defining the scope of a given remand. *See Campbell*, 168 F.3d at 265 (citing *United States v. Moore*, 131 F.3d 595, 597 (6th Cir. 1997)). A limited remand must "explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *Id.* at 265 (citation omitted). A "majority of the circuits that have spoken on this issue, including this one, follow a basic rule that a district court can review sentencing matters *de novo* unless the remand specifically limits the lower court's inquiry." *Id*. Further, "in light of the general principle of *de novo* consideration at resentencing, this court should leave no doubt in the district judge's or parties' minds as to the scope of the remand. The language used to limit the remand should be, in effect, unmistakable." *Id*. at 268.

The appellate mandate issued in this case reads as follows:

> The guideline range with the obstruction of justice enhancement is 267-327 months; without this enhancement the range is 210-262 months. Obi was sentenced to 300 months imprisonment, obviously within the advisory range with the enhancement but significantly above the range without it. Even though we agree with the government that the district court considered the relevant 18 U.S.C. § 3553(a) factors, because the court also considered an improperly calculated guideline range, the defendant's sentence is **VACATED** and the case **REMANDED** to the district court for resentencing, consistent with this opinion.

*Obi I*, 195 Fed. App'x at 341. This language does not outline the procedure that the district court is to follow nor does it articulate the chain of events with particularity. *See Campbell*, 168 F.3d at 268; *Moore*, 131 F.3d at 598. Although the appellate decision focused exclusively on obstruction, the mandate did not instruct the district court to limit its review to that particular issue. What is more, it did not confine the district court to sentence within the lower range of 210 to 262 months. The phrase "consistent with this opinion" does not create a limited remand, as it is boilerplate language and does not satisfy any of the requirements necessary to establish a limited remand. *See United States v. Young*, 66 F.3d 830, 836 (7th Cir. 1995) (observing that phrase "consistent with this opinion" does not constrain scope of issues district court may consider on resentencing). The Court issued a general remand in *Obi I* and consequently provided the sentencing court with discretion to conduct the second sentencing hearing *de novo*. Therefore, the sentencing court acted within its authority to correct the evidentiary record and revisit the issue of obstruction.

## B.  Obstruction of Justice Enhancement

In this second appeal, Obi argues that the sentencing court committed error in holding that his false statements amounted to obstruction of justice because of the decision in *Obi I*, which reversed and remanded the sentencing court's original finding of obstruction. Appellant Br. 30-37. He contends that the sentencing judge was obligated to adopt the appellate court's conclusion that there was no obstruction of justice to justify the two-level enhancement. Appellant Br. 26-28. Obi also claims that under the corrected record there is insufficient evidence to support an enhancement for obstruction. Appellant Br. 33-36. We review the district court's sentencing determination for abuse of discretion. *See Gall v. United States*, 128 S. Ct. 586, 594 (2007).

The district court imposed a two-level enhancement on Obi's sentence pursuant to U.S.S.G. § 3C1.1, which states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The guideline further provides, in Application Notes 4(g) and 5(b), that "making false statements, not under oath, to law enforcement officers," does not constitute obstruction of justice unless such statements "significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.*

We need not address the merits of the obstruction issue because the district court had discretion, pursuant to the general remand in *Obi I*, to conduct a *de novo* hearing and therefore sentence outside the guidelines based on aggravating factors, namely Obi's egregious conduct on the night of the crime. The Supreme Court recently held that the sentencing guidelines are advisory and do not operate to limit a district court's discretion to sentence outside the recommended range.

*See Gall*, 128 S. Ct. at 594; *United States v. Booker*, 543 U.S. 220, 258-59 (2005) ("*Booker*"); *United States v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005) ("[*Booker*] merely gave district courts the option to sentence a defendant differently than the Guidelines would require after calculating the Guideline range."). While district courts must still consult the guidelines for an appropriate sentence, they may depart from the recommended range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . . ."[3] 18 U.S.C. § 3553(b); *see Gall*, 128 S. Ct. at 594 ("[A] district judge . . . must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."). In this instance, the district court enhanced Obi's sentence to 300 months from a lower range of 210-262 months derived from the guidelines. The enhancement was again based on obstruction, which was contrary to the Court's decision in *Obi I*. However, in the second resentencing hearing, the district judge remarked: "I further comment for the record, even without the obstruction of justice ruling that I have made in this court, I would sentence the defendant to 300 months because the punishment fits the crime." JA at 241. Imposing a sentence above the recommended range on these grounds is precisely the type of discretion afforded to judges under § 3553 and *Booker*. *See* § 3553(b); *Gall*, 128 S. Ct. at 594; *Booker*, 543 U.S. at 251.

Even assuming the sentencing court improperly enhanced Obi's sentence on the basis of obstruction, this does not constitute reversible error; it is in fact harmless because the sentencing judge explicitly stated that he would impose the same sentence on alternative grounds. JA at 241. Where "a district court makes a mistake in calculating a guideline range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing unless we are certain that any such error was harmless–i.e. any such error did not affect the district court's selection of the sentence imposed." *United States v. Duckro*, 466 F.3d 438, 446 (6th Cir. 2006) (quotations omitted). During oral argument, Appellant also suggested that he was prejudiced for lack of notice as to a potential enhancement for egregious conduct. *See* Fed. R. Crim. P. 32(h). Although this issue might have amounted to reversible error previously, the Supreme Court has since determined that a defendant need not receive advance notice of a possible enhancement for the court to deviate from the sentencing guidelines. *See Irizarry v. United States*, 128 S. Ct. 2198, 2203-04 (2008). In *Irizarry*, the Court stated:

> Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government. The more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.

*Id*. at 2203. Indeed, "[g]arden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, *nature of the conduct* and so forth *should not* generally come as a surprise to trial lawyers who have prepared for sentencing." *Id*. (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st Cir. 2008)) (emphasis added). In this appeal, as in *Irizarry*, "even if we assume that the judge had contemplated a variance before the sentencing hearing began, the record

---

[3] It is well established that courts may impose sentences that exceed the recommended range for egregious conduct, repeat offenders, etc. *See United States v. Davis*, 170 F.3d 617, 623 (6th Cir. 1999); *see also United States v. Matheny*, 450 F.3d 633, 637-38 (6th Cir. 2006) (affirming upward departure from sentencing guidelines due to defendant's serious criminal history and likelihood that he would commit further crimes); *United States v. Thomas*, 24 F.3d 829, 834-36 (6th Cir. 1994) (affirming upward departure based on defendant's extensive criminal history).

does not indicate that a statement announcing that possibility would have changed the parties' presentations in any material way." *Id.* We therefore conclude that Obi had sufficient notice of a possible enhancement for both obstruction and his egregious conduct in committing the crime. Accordingly, we hold that the sentencing court committed harmless error in resentencing Obi to 300 months on the basis of obstruction.

## III. Conclusion

For the foregoing reasons, the district court's decision to sentence Appellant to 300 months imprisonment is AFFIRMED.