RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 24-1482

*v.*

KEVIN IKE OBI,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:04-cr-00230-1—Paul Lewis Maloney, District Judge.

Decided and Filed: March 13, 2025

Before: McKEAGUE, KETHLEDGE, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Alexis M. Sanford, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. Inspired by the Sentencing Commission's retroactive amendment of a relevant guidelines provision, Kevin Obi asked the district court to reduce his sentence. The district court did so, but in an admittedly modest fashion: it reduced Obi's 300-month sentence to 293 months. Obi challenges that outcome as procedurally and substantively unreasonable. We affirm.

**I.**

One evening roughly two decades ago, Kevin Obi provided a 21-year-old woman with a fatal dose of heroin.  *United States v. Obi (Obi II)*, 542 F.3d 148, 151 (6th Cir. 2008).  The events in question are grim.  Obi and the victim (along with some friends) returned to Obi's home from a bar.  When they arrived, the two snorted heroin and then had sex.  During the engagement, Obi noticed the victim snoring.  Nonetheless, he later told a friend to also have sex with the woman, who at that point was unconscious.  Mid-act, the friend realized the victim was not breathing.  After a brief delay, Obi called 911.  But it was too late for the victim, who was pronounced dead about an hour later.  *Id.*  When officers arrived, Obi told them there had been no drug use that evening.  *Id.* at 151–52.  Only several weeks later did the officers determine that Obi provided the fatal heroin, a crime to which he eventually pleaded guilty.  *Id.* at 152–53.

Obi's case would progress through multiple sentencing proceedings.  At Obi's initial sentencing hearing, the district court awarded Obi two additional criminal history points because he committed his crime while serving another sentence, resulting in a criminal history category of III.  At the same time, the court imposed a two-level enhancement to Obi's base offense level for obstructing justice by lying about the victim's drug use, leading to a total offense level of 37.  Next, working from the resulting guidelines range of 262 to 327 months, the court selected a 300-month sentence.  On appeal, we held that the record at that time did not support the obstruction enhancement—in part because it appeared that a companion had already told the police about the group's drug use—and accordingly remanded the case for resentencing.  *United States v. Obi (Obi I)*, 195 F. App'x 335, 341 (6th Cir. 2006).

At Obi's resentencing hearing, the district court allowed the parties to add to the evidentiary record.  The updated record clarified that it was the police who, as an interrogation tactic, falsely told Obi his companion had confessed to their drug use.  Based on these "supplemental proofs," R.132, PageID 766, the court again applied the obstruction enhancement, leading to the same guidelines range (262 to 327 months) and sentence (300 months) as before.  But this time, the court went further, stating that it would similarly have imposed the 300-month sentence using its sentencing discretion even if the enhancement were deemed inapplicable.  To reach this alternate holding, the court implicitly assumed that Obi qualified for the lower,

unenhanced guidelines range of 210 to 262 months.  From there, the court applied an upward variance of 38 months to reflect its discretionary judgment that a more severe sentence was necessary to comply with the purposes set out in 18 U.S.C. § 3553(a)(2).  Back on appeal, we affirmed.  And we did so without analyzing the obstruction enhancement.  Because we saw no error in the district court's independent, discretionary basis for imposing the 300-month sentence through a variance, any purported guidelines-calculation error was harmless.  *Obi II*, 542 F.3d at 155–56.

Yet Obi's road to sentence had one last remaining turn.  In 2023, the Sentencing Commission retroactively amended a part of the Guidelines dealing with criminal history points. *See* U.S. Sent'g Guidelines Manual supp. to app. C, amend. 821 (U.S. Sent'g Comm'n 2023). Under the amendment, a defendant no longer receives additional criminal history points for committing a crime while serving another sentence unless the defendant had seven or more other criminal history points.  *Id.*  Obi understandably took notice of this development.  After all, had he been sentenced under the newly amended Guidelines, he would not have received two of his criminal history points, and, as a result, would have faced a lower guidelines range.  So he asked the district court to "reduce [his] term of imprisonment" under a federal statute allowing such relief for a defendant whose "sentencing range . . . has subsequently been lowered" by a retroactive amendment to the Guidelines.  18 U.S.C. § 3582(c)(2).  Honoring Obi's request, the district court recalculated Obi's guidelines range, arriving at an amended range of 235 to 293 months.  Then, considering the "applicable" § 3553(a) sentencing factors, *see* § 3582(c)(2), the court determined that the seriousness of Obi's crime suggested a top-of-the-guidelines sentence. It thus entered a sentence of 293 months, which amounted to a seven-month reduction from Obi's original 300-month sentence.

## II.

A. Now taking his third sentencing appeal, Obi challenges his most recent sentence as unreasonable on both procedural and substantive grounds.  Two background points shape our review.

1. First, consider the modest nature of the sentence reduction relief Obi sought. Once the district court entered Obi's final sentence, it lost all power to modify that sentence except in very limited circumstances. *Dillon v. United States*, 560 U.S. 817, 824 (2010); 18 U.S.C. § 3582(b), (c). One of those, codified in 18 U.S.C. § 3582(c)(2), involves instances in which a defendant (like Obi) was sentenced under a guidelines range that has since been lowered by a retroactive guidelines amendment. In that case, the district court "may reduce" the sentence, but only after engaging in a two-step process. § 3582(c)(2); *accord Dillon*, 560 U.S. at 826–27.

At step one, the district court must determine whether Guideline § 1B1.10 authorizes a reduction, and, if so, to what extent. *Dillon*, 560 U.S. at 827; *see also* U.S. Sent'g Guidelines Manual § 1B1.10 (U.S. Sent'g Comm'n 2024) [hereinafter 2024 Guidelines]. That is so because the statute allows a reduction only if it "is consistent with applicable [Sentencing Commission] policy statements," and § 1B1.10 is the controlling policy statement in this context. *Dillon*, 560 U.S. at 826 (quoting § 3582(c)(2)). To make that assessment, the court calculates the guidelines range "that would have been applicable to the defendant" if the amendment had been in place at his prior sentencing by substituting "only [that] amendment[]," "leav[ing] all other guideline application decisions" from the prior sentencing "unaffected." *Id.* at 827; 2024 Guidelines, *supra*, § 1B1.10(b)(1). If this process yields an amended guidelines range lower than the original one, the court moves to step two. There, it considers the § 3553(a) sentencing factors "to the extent that they are applicable" to determine whether the reduction authorized at step one is, in the court's discretionary judgment, warranted. *Dillon*, 560 U.S. at 827 (quoting § 3582(c)(2)).

Note how each step provides a restraint that distinguishes this "limited adjustment to an otherwise final sentence" from "a plenary resentencing proceeding." *Id.* at 826. To start, the district court does not calculate the guidelines from scratch but merely replaces the since-amended provision, unquestioningly adopting all other calculations. Nor, thereafter, does the district court need to consider all of the § 3553(a) sentencing factors, but merely "any" that are "applicable." *Id.* at 827.

2. Before turning to Obi's argument, a second consideration bears noting: the conceptual oddity lurking behind his attempted "reasonableness" challenge in this setting. Like all appeals, Obi's "must come within the terms of [an] applicable statute." *Abney v. United States*, 431 U.S.

651, 656 (1977).  True, the district court's "final" decision on Obi's sentence reduction motion triggers 28 U.S.C. § 1291, which thereby gives us subject matter jurisdiction.  *United States v. Marshall*, 954 F.3d 823, 829 (6th Cir. 2020).  But that only gets Obi so far.  Review of criminal sentences under § 1291 standing alone is very limited.  *United States v. Richardson*, 960 F.3d 761, 764 (6th Cir. 2020) (per curiam).  In particular, § 1291 does not by itself authorize review for "reasonableness."  *Id.*

That method ultimately derives from 18 U.S.C. § 3742—which, among other things, simultaneously imposes conditions on an appellate court's "review of an otherwise final sentence" and provides additional standards of review by which to evaluate such a sentence. § 3742(a), (e).  In construing § 3742, the Supreme Court, in *United States v. Booker*, divined so-called "reasonableness" review.  543 U.S. 220, 259–61 (2005).  After excising the standards of review Congress had enacted in § 3742(e) as casualties of its Sixth Amendment holding, the Supreme Court read between the lines of the now heavily edited statute to find an "implicit[]" standard of review:  "reasonableness."  *Id.*  But because *Dillon* clarified that *Booker*'s Sixth Amendment concerns do not apply in a § 3582(c)(2) sentence reduction proceeding, neither does this remedial invention.  *United States v. Bowers*, 615 F.3d 715, 727 (6th Cir. 2010) (citing *Dillon*, 560 U.S. at 828–29).  This means that, in an appeal of a § 3582(c)(2) sentence reduction, "reasonableness" arguments are barred by § 3742(a)'s conditions for appealing an "otherwise final sentence."  *Id*.  Why?  Section 3742(a)(1) makes the sentence appealable if it was "imposed in violation of law," and, after *Dillon*, *Booker*-style unreasonableness is not a "cognizable 'violation of law'" that can satisfy this condition in a sentence reduction appeal.  *Id.* (quoting § 3742(a)(1)).

Of course, just because "reasonableness" writ large is not a basis for appeal under § 3742(a)(1) does not mean that every argument we currently classify under this heading must also fall short.  For example, § 3742(a)(2) separately authorizes review based on "incorrect application of the sentencing guidelines."  This provision seems to independently authorize review of Obi's guidelines-based argument, even though Obi, echoing our case law, frames the issue as one of "procedural . . . reasonableness."  Appellant Br. 8; *cf. United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (noting that procedural reasonableness requires the district

court to "properly calculate the guidelines range"). Still, there is no doubt that Obi's "substantive reasonableness" argument, at least, derives solely from *Booker*, *see Richardson*, 960 F.3d at 764, and thus fails to clear the bar of § 3742(a), *Bowers*, 615 F.3d at 727.

The parties nonetheless proceed to the merits of both of Obi's reasonableness challenges, not by resorting to some other source of statutory authorization, but on the theory that § 3742(a) is merely a claim-processing rule that the government has waived. These statements are factually correct. The limits in § 3742(a) do not affect our subject matter jurisdiction, *see Marshall*, 954 F.3d at 829, and the government does purport to waive those limits, *see* Appellee Br. 16 n.3.

But it does not necessarily follow that this waiver by itself compels us to consider Obi's arguments. *See United States v. Begley*, No. 21-5760, 2023 WL 2991868, at *2 (6th Cir. Apr. 18, 2023) ("We have not yet had the opportunity to consider the effect of a § 3742(a) waiver in the context of § 3582(c)(2) appeals . . . ."). After all, with the very statute the government purports to waive the one that implicitly creates the "reasonableness" argument Obi asserts, *see Booker*, 543 U.S. at 259–61, on what statutory basis would we grant Obi relief if we found his sentence to be unreasonable (putting aside § 3742(a)(2) for the guidelines-based "procedural reasonableness" challenge)? Put differently, merely that the government can waive a statute limiting our power to grant certain forms of relief does not mean we can then grant whatever form of relief we see fit. Again, we still need a statutory or constitutional source of authority to justify our actions. *Abney*, 431 U.S. at 656. And neither § 1291 nor the Sixth Amendment provides us any basis for vacating a reduced sentence under § 3582(c)(2) merely because it is unreasonable. *See Richardson*, 960 F.3d at 764; *Dillon*, 560 U.S. at 828–29.

In this setting, three other circuits, it bears adding, bar reasonableness review on the merits, rather than as a matter of appealability under § 3742(a). With *Booker* inapplicable, those courts see no grounds to review for reasonableness. *See, e.g.*, *United States v. Collington*, 995 F.3d 347, 358–59 (4th Cir. 2021) ("[W]e have not applied the typical procedural and substantive reasonableness requirements to abuse-of-discretion review of § 3582(c)(2) motions." (citations omitted)); *United States v. Evans*, 587 F.3d 667, 672 (5th Cir. 2009) ("The *Booker* reasonableness standard does not apply to § 3582(c)(2) proceedings." (citation omitted)); *United*

*States v. Brewster*, 335 F. App'x 8, 9 (11th Cir. 2009) (per curiam) ("[R]easonableness review does not apply in the present context because a § 3582(c)(2) proceeding does not constitute a full resentencing." (citations omitted)). And, in an unpublished opinion, our Court has followed suit, rejecting a substantive reasonableness challenge on the merits in a case that was appealable under a different portion of § 3742(a) because "*Booker* unreasonableness review does not apply to § 3582(c) proceedings." *United States v. Chambliss*, 398 F. App'x 142, 144 (6th Cir. 2010) (cleaned up).

These other circuits and *Chambliss* may have the correct approach, although our Court has admittedly charted a different course in relying primarily on § 3742(a)(1). Or both approaches may be correct, merely as to different stages of the analysis. Either way, each time the government's asserted waiver has presented itself, we have sidestepped the question by assuming the government may do so and instead have affirmed the district court's sentence on the merits. *Begley*, 2023 WL 2991868, at *2; *United States v. McMillin*, No. 24-5530, 2025 WL 523676, at *3 (6th Cir. Feb. 5, 2025); *United States v. Payne*, No. 24-5353, 2025 WL 475225, at *3 (6th Cir. Feb. 12, 2025). We can do so again today. With our subject matter jurisdiction secure and assuming for today's purposes that the government's concession can breathe life into Obi's arguments, we turn to the merits.

B. Begin with Obi's procedural reasonableness challenge to his reduced sentence, an argument that requires us to give any legal questions fresh review while accepting the district court's factual findings unless clearly erroneous. *Rayyan*, 885 F.3d at 440. As noted above, the "limited adjustment" allowed here required the district court to calculate Obi's amended sentence by "substitut[ing] only the [relevant] amendment[]," "leav[ing] all other guideline application decisions unaffected." *Dillon*, 560 U.S. at 827; *see* 2024 Guidelines, *supra*, § 1B1.10(b)(1). It did so. Beginning with the 262-to-327-month guidelines range used at Obi's resentencing (based on an offense level of 37 and a criminal history category of III), the court substituted the retroactive amendment for the Guideline previously in place. Obi, recall, had received two criminal history points for committing his crime while serving another sentence. *See* U.S. Sent'g Guidelines Manual § 4A1.1(d) (U.S. Sent'g Comm'n 2005) [hereinafter 2005 Guidelines]. But because he had fewer than seven other criminal history points, those two points fell away under

the amended Guideline. *See* 2024 Guidelines, *supra*, § 4A1.1(e). The net result reduced Obi's criminal history category to II. Combining that criminal history with the untouched offense level of 37, Obi's amended guidelines range, as the district court correctly found, was 235 to 293 months. *See* 2005 Guidelines, *supra*, ch. 5, pt. A, Sentencing Table.

Contesting that result, Obi targets the district court's use of an offense level of 37 rather than his preferred offense level of 35. Obi's reasoning requires some explanation, including a review of our prior decisions in his case. The offense level of 37 includes a two-level enhancement for obstruction of justice, *see* 2005 Guidelines, *supra*, § 3C1.1, which was imposed at each of Obi's prior sentencings. Yet Obi believes it was error to include the two-level enhancement in calculating his amended guidelines range. To show why, he points to a statement in *Obi II*, which he says casts doubt on the district court's earlier assessment as to obstruction of justice: "Accordingly, we hold that the sentencing court committed harmless *error* in resentencing Obi to 300 months on the basis of obstruction." 542 F.3d at 156 (emphasis added). To Obi, this sentence reflects an express holding that the two-level obstruction enhancement was erroneous, meaning it may not be included in his offense level calculation here.

Obi's argument invokes the "law of the case" doctrine. Derived to promote both consistency and efficiency over a case's lifespan, this longstanding rule commands that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (citation omitted). In view of that directive, we must defer to *Obi II* on any issues the panel there decided "expressly or by necessary implication." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam) (citation omitted). But we need not do the same for "something" the opinion merely "said in passing"—what Latin scholars call "obiter dictum," and lawyers shorten to "dictum" (or its plural "dicta"). *Dictum*, Black's Law Dictionary (12th ed. 2024); *see also Haddad*, 758 F.3d at 781. This latter understanding is tied to Article III's "case-or-controversy requirement," as a statement not needed to resolve the pending "case or controversy" is not a pure exercise of the judicial power. *Wright v. Spaulding*, 939 F.3d 695,

700–01 (6th Cir. 2019) (quoting U.S. CONST. art. III, § 2).   Dictum, in other words, cannot be "law of the case" because it is not "law" at all.   *See id.*; *Haddad*, 758 F.3d at 781.

Taking all of this together, for *Obi II*'s statement about the obstruction enhancement being erroneous to be a law-of-the-case holding, three indicators must be present.   One, the statement must have "contribute[d] to the judgment."   *Wright*, 939 F.3d at 701.   Two, the panel must have "intended to rest the judgment (if necessary) on [that] conclusion."   *Id.*   And three, the panel must have "considered the issue and consciously reached a conclusion about it."   *Id.* at 702.   With respect to the first element, we have previously questioned whether the "error" portion of a "harmless error" ruling could ever contribute to a judgment.   *See id.* at 701 n.2. Either way, Obi fails to demonstrate the remaining elements, dooming his law-of-the-case argument.

All things considered, the *Obi II* panel neither considered and consciously resolved the obstruction-enhancement issue nor intended to rest its holding on that conclusion.   *See id.* at 701–02.   To the contrary, the opinion repeatedly stated that it did not decide—and did not need to decide—the obstruction issue.   *Obi II*, 542 F.3d at 155 ("We need not address the merits of the obstruction issue . . . ."); *id.* at 156 ("Even assuming the sentencing court improperly enhanced Obi's sentence on the basis of obstruction . . . .").   Confirming as much is the fact that, save for a bare citation to the obstruction Guideline, *Obi II*'s analysis focused solely on the district court's independent, discretionary basis for imposing Obi's sentence and the resulting harmlessness of any purported guidelines error.   *Id.* at 155–56.   In other words, neither "expressly [n]or by necessary implication," did the opinion hold that the district court erred in applying the enhancement.   *Haddad*, 758 F.3d at 781 (citation omitted).   Perhaps a more precise articulation would have removed any doubt over the issue.   But any modest imprecision does not a holding make.   Again, at most, *Obi II's* language reflects the panel "*decid[ing]* one issue" while "merely *opin[ing]* about another."   *Wright*, 939 F.3d at 701.

Seeing things differently, Obi turns our attention all the way back to *Obi I*.   There, we held that the record from the first sentencing did not support the obstruction enhancement.   *Obi I*, 195 F. App'x at 341.   As part of the ensuing remand, the district court sought to remedy the matter by engaging in additional factfinding regarding what drug-related information was known

by officers (and when). Nonetheless, Obi believes that *Obi II* "implicitly adopt[ed] [the] reasoning in *Obi I*" that rejected the obstruction enhancement by "refer[ing] to its earlier opinion" and "stating that the district court's holding on remand was contrary to *Obi I*." Appellant Br. 3. True, our second opinion "referred" to our first. That is to be expected in any later appeal. But it did so only in describing the case's procedural history, not to "adopt" *Obi I*. *See Obi II*, 542 F.3d at 153. If anything, *Obi II* rejected *Obi I's* holding on the obstruction issue. As *Obi II* explained, our earlier decision "misconstrued" the sentencing record and "[r]el[ied] in part on [a] factual error." *Id.* at 153 & n.2. Further, *Obi II* added, *Obi I*'s "general remand" left the district court "within its authority to correct the evidentiary record" that *Obi I* misconstrued, and in turn to "revisit the issue of obstruction." *Id.* at 153–54. And in describing the district court's resentencing calculation, *Obi II* explicitly refused to condemn those efforts. *Id.* at 154–56.

In sum, *Obi II* did not hold the obstruction-enhanced offense level of 37 to be erroneous. Nor did the retroactive guidelines amendment Obi relied on for his § 3582(c)(2) motion affect his offense level. Thus, by "leav[ing] all other guideline application decisions unaffected" and in turn using 37 as Obi's offense level, the district court committed no procedural error. *See* 2024 Guidelines, *supra*, § 1B1.10(b)(1); § 3582(c)(1)(A)(ii).

C. Obi also challenges the substance of the district court's ruling. He claims that, even as reduced, his "sentence is too long." *Rayyan*, 885 F.3d at 442. Again, assuming we may reach a substantive reasonableness challenge to a § 3582(c)(2) ruling, we see no basis for relief. At the outset, it bears reiterating the fundamentally different role the § 3553(a) factors play in a sentence reduction proceeding. Unlike at an initial sentencing, where § 3553(a) dictates that the court must consider each sentencing factor, at the sentence reduction stage, Congress determined that courts need only consider those factors "to the extent that they are applicable." § 3582(c)(2). That distinction matters. Ordinarily, we would ask whether a district court "placed too much weight on some of the § 3553(a) factors and too little on others," the customary inquiry in a substantive reasonableness analysis. *Rayyan*, 885 F.3d at 442. But here, Congress has authorized the district court, in deciding the sentence reduction motion, to give *no* weight to

certain factors—that is, "any" factors it determines are not "applicable." *Dillon*, 560 U.S. at 827 (citing § 3582(c)(2)).

It follows that, to whatever extent we can consider the substance of a district court's § 3582(c)(2) ruling, our standard of review in doing so is even more relaxed than the already relaxed substantive reasonableness standard. By way of comparison, in the analogous circumstance in which a defendant challenges the adequacy of the district court's "Statement of Reasons for Imposing a Sentence" under 18 U.S.C. § 3553(c), we have accounted for these differences by blessing § 3582(c)(2) rulings whose § 3553(a) reasoning is "cursory at best." *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *cf. Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018) (explicitly declining to answer whether "district courts have equivalent duties [under § 3553(c)] when initially sentencing a defendant and when later modifying the sentence"). We need not say more because Obi faces daunting obstacles either way. At the very least, he must overcome not only the "highly deferential review" we give a district court's exercise of "reasoned discretion" in weighing the sentencing factors, *Richardson*, 960 F.3d at 765 (quotation marks omitted), but also the further presumption of reasonableness we afford his within-guidelines sentence, *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Obi cannot do so. The district court determined that "the seriousness of [Obi's] crime" suggested "a sentence close to the original 300 months is appropriate." R.197, PageID 1303. In reaching this conclusion, it weighed the "grav[ity]" of Obi's sale of heroin to young adults, the fact that the victim's death "was preventable and tragic," and Obi's failure to "promptly intervene[]" when he could have. *Id.* It then explicitly determined that the 293-month sentence would reflect the seriousness of the crime, promote respect for the rule of law, punish Obi, deter others, and protect the public. It also noted that it "agree[d] with the prior Judge's assessment" of the appropriate sentence under the § 3553(a) factors. *Id.* That district court judge, it bears adding, heard extensive arguments about the § 3553(a) factors and decided that Obi's "horrible" and "ruthless" crime—which included "having sex with the victim while she was under the influence of heroin, indeed dying," and then making her "available" for his friend while in that same state—justified the 300-month sentence. R.132, PageID 773.

Against all of this, Obi advances his youth at the time of the crime, his failed attempt to get the victim medical help, his remorse over her death, his substance abuse and mental health issues in the years leading to the crime, and his lack of criminal history. Those are no small matters. Yet the original sentencing court weighed these exact same arguments and rejected Obi's pre-conviction "history" and "characteristics" as grounds for further leniency. *Id.*, PageID 769; *see also United States v. Johns*, 65 F.4th 891, 893–94 (6th Cir. 2023) (allowing district court to reject defendant's mitigating "history and characteristics" as a whole instead of addressing each ground for leniency). And the sentence reduction court, after adopting this reasoning, added its own thoughts on the gravity of Obi's offense in determining that a near-original sentence was appropriate. In the end, that court, having considered the § 3553(a) factors, had "ample reasons" to conclude Obi deserved a within-guidelines sentence. *Vonner*, 516 F.3d at 390. As Obi has not shown that his "special circumstances are special enough that . . . they *require[d]*" more leniency, we see no basis to displace the district court's conclusion. *Id.* (citation omitted).

\* \* \* \* \*

We affirm the judgment of the district court.